

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:

Opinion No. O-4193
Re: Is the location of Walter
Crowder's cafe as described
under the police jurisdiction
of the City of Pasadena or
of the City of Houston, and
related question?

   Your letter of October 27, 1941, requesting the
opinion of this department on the questions stated herein
reads as follows:

   "We desire your opinion upon the questions
hereinafter stated, the facts in regard to which
are as follows:

   "1. In 1913, the state legislature passed
what is now Articles 1183, 1184, 1185 and 1186 of
the Revised Civil Statutes of Texas, under the
terms of which cities situated along or upon navi-
gable streams and acting under special charters
were authorized to extend their limits for limit-
ed purposes so as to include within the city
limits the navigable stream upon which the city
might be located and the land lying on each side
thereof for a distance of 2500 feet from the
thread of the stream and for a distance up or
down the stream of twenty miles or less from the
ordinary boundaries of the city, and were given
certain police powers within such area as might
be included within the city under the terms of
said Articles.

   "2. Shortly thereafter in the year 1913,
the city of Houston passed an ordinance in keep-
ing with said Articles of the statutes and by

Honorable Bert Ford, Administrator, Page 2

the terms thereof extended its limits for the
limited purposes named in the statute for approx-
imately twenty miles down the Buffalo Bayou from
the city limits as then fixed, and the land lying
on each side thereof for a distance of 2500 feet
from the thread of the stream.

"3.    In the latter part of the year 1928
the city of Pasadena was incorporated as a city
under the general laws of Texas, since which
time it has functioned as such. At the time of
its incorporation the city of Pasadena fixed its
northern boundary at the north line of Second
Street for some distance both east and west from
Shaver Street. Shaver Street is a main thorough-
fare running north and south through the city of
Pasadena and in its extension beyond the city
limits northward at Second Street, it lies be-
tween the properties of the Crown Central Petro-
leum Refining Company on the east side and the
Champion Paper and Fiber Company's plant on the
west side until it reaches Buffalo Bayou at what
is known as the Pasadena Ferry. Crown Central
Petroleum Company owns the land just north of
said Second Street and east of said Shaver Street,
outside of said corporate limits of the city of
Pasadena, and a Mr. Hughes owns a tract of land
lying on the east side of Shaver Street and south
of Second Street, and has located on said tract
of land a cafe building just across Second Street
from the Crown Central Refinery and within the
corporate limits of the city of Pasadena as fixed
at the time of its incorporation.

"4.    Since the time of its incorporation the
city of Pasadena has functioned in all respects
under the laws of Texas as a city, and has levied,
assessed, and collected taxes upon the properties
within the corporate limits as fixed at the time
of incorporation and further has exercised police
jurisdiction continuously from time of incorpora-
tion over the entire area included within its
corporate limits including the area where said
cafe building is now located on the Hughes pro-
perty.

Honorable Bert Ford, Administrator, Page 3

"Also since its incorporation the city of Pasadena has issued several series of bonds, a large portion of which bonded indebtedness is still outstanding and unpaid, among which bond issues are the following: Fire Station Tax Bonds, Water Works Tax Bonds, Sewer System Tax Bonds and 1929 Refunding Tax Bonds, all dated September 25, 1929, 1931 Refunding Tax Bonds dated February 10, 1931, Water and Sewer Revenue Bonds dated March 1, 1934, Sewer System Tax Bonds dated March 10, 1938, Street Improvement Tax Bonds dated March 10, 1938, all of which were approved by the Attorney General of Texas and transcripts of which are on file in that office.

"5. The north line of Second Street at its intersection with Shaver Street is approximately 2100 feet south from the thread of the stream of Buffalo Bayou and that a line drawn across Shaver Street parallel to the thread of the stream of Buffalo Bayou and at 2500 feet distant therefrom would probably cross Shaver Street and the north part of the city of Pasadena as fixed by its incorporation proceedings about 400 feet south of said cafe building on the Hughes property. In other words, the said cafe building on the Hughes property is within the area lying between the thread of Buffalo Bayou and said 2500 foot line as fixed by the ordinance of the city of Houston in 1913, also that said cafe building and the Hughes property are within the area included in the city of Pasadena as fixed at the time of its incorporation.

"6. The city of Houston has never acquired any land either by purchase, condemnation or gift lying within the claimed corporate limits of the city of Pasadena as fixed at the time of its incorporation, that is south of Second Street, for the improvement of navigation, or for the purpose of establishing and maintaining wharves, docks, railway terminals, side tracks, warehouses, or any other facilities or aids whatsoever to either navigation or wharves, or for any other purpose, and the city of Houston has not by ordinance or

Honorable Bert Ford, Administrator, Page 4

otherwise exercised any police jurisdiction whatever over any part of the area within the corporate limits of the city of Pasadena, as fixed at the time of its incorporation.

"7. An election was held on May 22, 1937, in the city of Pasadena for the purpose of determining whether or not the sale of liquor and beer shall be prohibited within the city of Pasadena, in Harris County, Texas, and that a majority of the voters voting at said election voted in favor of prohibiting the sale of all liquors, including beer and wine, and the commissioners' court canvassed the returns and declared the results, and by reason thereof it has ever since that time been unlawful to sell liquors, beer or wine within the corporate limits of the city of Pasadena. The corporate limits of the city at the time of said election were the same as those fixed at the time of incorporation, the north line thereof being at Second Street, and said cafe building and Hughes property then as now being within the claimed corporate limits of the city of Pasadena.

"8. Walter Crowder is now engaged in operating a cafe business in the above mentioned cafe building on the Hughes property, and has applied to the county judge and received a license dated September 17, 1941, authorizing him to sell and dispense beer at said location, the issuance of said license having been approved by the Texas Liquor Control Board and number thereof being 42843.

"9. There has been some complaint that since Walter Crowder's place of business is within the corporate limits of the city of Pasadena as claimed ever since the incorporation thereof, a license or permit to sell beer at that location could not be lawfully issued to him, and any sale of beer at that place of business would be unlawful by reason of the facts and circumstances hereinabove set out. On the other hand, Walter Crowder believes he is entitled to the license and to sell beer at said location for the reason that it is situated within

Honorable Bert Ford, Administrator, Page 5

> 2500 feet of the thread of the stream of Buffalo Bayou as fixed by the 1913 ordinance of the city of Houston and by reason thereof under the police jurisdiction of the city of Houston exclusively.
>
> "We therefore desire your opinion upon the following questions:
>
> "1. Is the location of Walter Crowder's cafe as hereinabove described under the police jurisdiction of the city of Pasadena, or of the city of Houston?
>
> "2. Is the location of Walter Crowder's cafe as hereinabove described within a 'dry area' by reason of the above mentioned beer election in the city of Pasadena, or is said cafe located within the city of Houston, or to state it differently: Could a license be legally issued to Walter Crowder authorizing the sale of beer at said location?
>
> "Attached hereto is a map showing the location of the streets and properties hereinbefore mentioned and the approximate location of the 2500 foot line from the thread of the channel to Buffalo Bayou."

Under the facts stated in your letter the cafe in question "is within the area lying between the thread of Buffalo Bayou and said 2500 foot line as fixed by the ordinance of the city of Houston in 1913. . . . and also within the area included in the city of Pasadena as fixed at the time of its incorporation."

It is stated by McQuillin on Municipal Corporations, 2nd Edition, Volume I, page 713:

> "It is a self-evident proposition that two lawfully and fully organized public or municipal corporations cannot have jurisdiction and control at one time of the same population and territory and exercise like or similar powers in the same boundaries. However, in the absence of constitutional restrictions, no objection exists to the

Honorable Bert Ford, Administrator, Page 6

power of the legislature to authorize the forma-
tion of two municipal corporations in the same
territory at the same time for different purposes,
and to authorize them to co-operate so far as
cooperation may be consistent with or desirable
for the accomplishment of their respective pur-
poses.

"Municipal corporations organized for dif-
ferent purposes may include the same territory,
as a city and a county, or a city and a board
of education, or a school district, or a city
and a port district. A drainage district may
include within its limits part of the territory
of an incorporated village.

"The rule that there cannot be two munici-
pal corporations of like kind and powers in the
same area at the same time must be understood
as meaning two legal and effective corporations.
There may be a de facto corporation without right,
and a corporation legally organized but not in
actual government until the de facto corporation
is ousted. The functions of the legal corpora-
tions are in abeyance until the ouster, when they
then come into activity. For like reasons two
distinct charters for one and the same corpora-
tion cannot exist at the same time, and, hence,
a municipal corporation already in existence and
having a valid charter cannot be reincorporated
by a court having no authority to repeal, annul
or declare forfeited the existing charter, but
whose powers are, on the contrary, expressly
limited by statute to the incorporation of places
and inhabitants 'not incorporated'."

In the case of City of Galena Park, et al. v. City
of Houston, 133 S. W. (2d) 162, (writ of error refused) it
was held in effect that two municipal corporations cannot
have "existent control over the same territory and contem-
poraneously exercise essentially the same governmental powers
in it". It was further held in this case that the city of
Houston by enactment of an ordinance extending its boundaries
along Buffalo Bayou and the Houston Ship Canal as authorized
by emergency statutes to provide wharfage facilities for

cities on navigable streams, did not acquire merely limited powers for navigation purposes over the territory included within such boundaries, but acquired exclusive jurisdiction thereover so as to preclude the city of Galena Park from subsequently enlarging its boundaries to include a portion of the land theretofore annexed by the city of Houston.

It is shown in the above mentioned case that

"On April 18, 1913, the city of Houston, by an ordinance in all respects appropriating such powers to do that as was granted it (a duly qualified city) under a general law of the State passed March 17, 1913, now appearing as Chapter 14, Title 28, or Articles 1163 to 1187, inclusive, of the Revised Statutes of Texas, extended its boundaries for an air-line distance of 20 miles from its then eastern limit-line down and along Buffalo Bayou and the Houston Ship Channel, so as to include within the city for that distance such navigable stream, together with the land adjoining it on both sides for 2500 feet each way, from the threads thereof.

"Thereafter, in 1935, the City of Galena Park, a small town incorporated under the general law, and pursuant to the statutes authorizing such municipalities in prescribed manner and circumstances to enlarge their boundaries, undertook to incorporate and include within its limits for general purposes a portion of the land so contiguous to Buffalo Bayou and the Houston Ship Channel that had theretofore been annexed to and appropriated by the city of Houston, under the ordinance referred to.

". . . .

"As before indicated, the City of Houston, being then situated upon the navigable stream of Buffalo Bayou, and being in existence under a special charter, one month after its passage adopted the necessary ordinance and thereby took advantage of such newly declared public policy of the state, then extending its jurisdiction over the 20-mile strip--inclusive of the portion here in controversy--

Honorable Bert Ford, Administrator, Page 8

and has ever since maintained and exercised it.

". . . .

"When the detailed provisions of the Act are looked to, such policy seems all the more plain, the specific purposes being set out in these four successive Articles Nos. 1183 to 1186, inclusive. There is then appended Article 1187, which, though last in order, is worthy of mention first as reflecting clear light upon what was intended in the preceding four. It runs as follows:

"'The power granted in the four preceding articles shall not authorize the extension of the territory of any city for the limited purposes named so as to include any land which is already part of any other city or town corporation whether incorporated under the general laws or under special law, or any land at the time belonging to any other city or town.'

"Thus by express interdiction the City of Houston in 1913, when it came to so extend its limits, could not have included therein the portion here involved, had it already been incorporated into the City of Galena Park; by the same token, it would seem that in 1935, when the City of Galena Park in turn came seeking the same territory, it was likewise precluded from taking it in, because of its special incorporation and appropriation by the City of Houston 22 years before."

We think, what was said here with reference to the City of Galena Park seeking the same territory, which was within the incorporate limits of the City of Houston, it was precluded from taking it in because of its special incorporation and appropriation by the City of Houston, is equally applicable to the City of Pasadena when it sought like territory and would be precluded from taking it in because of its special incorporation and appropriation by the City of Houston in the year 1913.

For definitions of the term "thread of a stream" we refer you to Words and Phrases, Permanent Edition, Volume 41, page 592.

In answer to your first question as stated above, you are advised that it is our opinion that Walter Crowder's cafe is situated within the city limits of Houston and is under the police jurisdiction of said city.

In reply to your second question, you are advised that it is our opinion that the said cafe is not located within a dry area notwithstanding the local option election held in and by the City of Pasadena but that said cafe, as above stated, is situated within the city limits of Houston and the local option election has no effect or force with reference to that territory or area included in the city limits of Houston. It is our further opinion that the above mentioned license could be legally issued to Walter Crowder authorizing the sale of beer at said location unless legally prohibited by some regulation by the City of Houston.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

APPROVED NOV 15, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

AW:mp



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN